IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VFG LABAR, LLC, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | No. 22-2436 |
| v. | : | |
| | : | |
| SIMPSON HOUSE, INC., d/b/a | : | |
| SIMPSON GLEN, | : | |
|     Defendant. | : | |

## MEMORANDUM

**June 24, 2024**                                                                                       **Anita B. Brody, J.**

On June 22, 2022, VFG Labar, LLC ("VFG") sued Simpson House, Inc.[1] ("Simpson"). Compl., ECF No. 1. The complaint arises out of disagreements stemming from the parties' common ownership of a parcel of land in Stroud Township, Pennsylvania. *Id.* VFG seeks partition of this property and damages for Simpson's alleged tortious conduct. *Id.* On July 19, 2022, Simpson moved to partially dismiss VFG's complaint and to transfer the case to the Middle District of Pennsylvania. Mot. to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative, Mot. to Transfer Venue Pursuant to 1404(a) ("Mot. to Dismiss"), ECF No. 6. I will grant in part and deny in part Simpson's motion to dismiss, and I will grant Simpson's motion to transfer.

---

[1] Simpson House, Inc. does business as Simpson Glen. Compl. ¶ 2. I refer to Simpson House, Inc. and Simpson Glen interchangeably as "Simpson."

1

## I. BACKGROUND

This is a dispute between co-owners of a parcel of land in Monroe County, Pennsylvania.[2] On May 1, 1996, VFG entered into a joint venture agreement with Camelot Village at Stroudsburg, LLC ("Camelot") to develop a co-owned parcel of land ("the property") in Stroud Township, Monroe County, Pennsylvania. Compl. ¶ 6. VFG intended to develop approximately 400 single-family residential units on the property. *Id.* ¶ 9. On September 8, 1998, Camelot entered into an agreement with another company, Simpson, and Camelot transferred all its rights, title, and interest in the property to Simpson. *Id.* ¶ 10. Simpson planned to construct assisted living housing in a portion of the property ("Simpson's portion") and agreed that it would have no interest in the remainder of the property. *Id.* On November 23, 1998, VFG conveyed various parcels of land within the property to itself and to its new partner, Simpson. *Id.* ¶ 13.

During the fifteen years following these agreements and conveyances, VFG and Simpson engaged in protracted negotiations over the partition of the property. *Id.* ¶ 17. Simpson refused to agree to a partition running along the main access road of the property. *Id.* ¶ 19. VFG considered Simpson's proposed partition to be inequitable, and it believed that Simpson was not negotiating in good faith. *Id.* ¶¶ 18, 20.

---

[2] I accept all facts in the complaint as true for the purposes of this opinion. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Despite the parties' inability to reach an agreement regarding partition, Simpson began to develop the property. *Id.* ¶ 21. Simpson falsely held itself out to be VFG in order to secure documents from the Borough of Stroudsburg's Planning Board that would allow it to develop the property for Simpson's exclusive benefit. *Id.* ¶¶ 23, 24. This conduct allowed Simpson to secure a subdivision of the property and relocate the main access road, both of which benefitted Simpson and worked to VFG's detriment. *Id.* ¶¶ 25, 26. The new location of the access road prevented VFG from pursuing its own development of the property. *Id.* ¶ 27.

Because of the failure to reach a partition agreement, VFG was unable to move forward with its own development plans. *Id.* ¶ 29. VFG substantially completed 15 single-family residential units, and it attempted to sell these units. *Id.* ¶¶ 30, 31. At the time of closing, Simpson refused to execute the deeds of sale even though the units were located over 1,000 feet from Simpson's portion of the property. *Id.* ¶¶ 31, 34. VFG alleges that Simpson did this to try to induce VFG to acquiesce to its subdivision demands. *Id.* ¶ 33. VFG had to compensate the prospective home buyers for VFG's failure to deliver them title to their units. *Id.* ¶ 36. As a result of Simpson's actions, these 15 units have remained vacant and unsold for several years, and the property has depreciated in value. *Id.* ¶¶ 35, 41. VFG has also had to pay the taxes, insurance, zoning ordinance citations, and upkeep costs for these units. *Id.* ¶¶ 37, 40. VFG's vacant sales office has received

citations from the Borough of Stroudsburg, and the Borough now seeks to remove the office. *Id.* ¶ 38.

For the past fifteen years, VFG has made all payments for snow removal and utilities for the entire property. *Id.* ¶ 44. Simpson has not contributed to these payments. *Id.* ¶ 43.

On June 22, 2022, VFG filed suit, seeking partition of the property and damages for Simpson's alleged unjust enrichment, tortious interference with VFG's prospective business relations, and fraud. Compl. On July 19, 2022, Simpson moved to dismiss VFG's complaint for failing to state a claim as to Counts II, III, and IV: unjust enrichment, tortious interference, and fraud allegations. Mot. to Dismiss. Simpson simultaneously moved to transfer this case to the Middle District of Pennsylvania. *Id.* On March 9, 2023, the case was placed in suspense—and later stayed—as the parties engaged in several settlement proceedings and status conferences. Order, ECF No. 19; Order, ECF No. 46. These negotiations did not successfully resolve this case. On May 8, 2024, I lifted the stay and issued a scheduling order. Order, ECF No. 50. I now turn to Defendant Simpson's partial motion to dismiss VFG's complaint, which I will grant in part and deny in part. I will grant Simpson's request to transfer the case to the Middle District of Pennsylvania.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take the following three steps:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013), *as amended* (May 10, 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not

5

consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered" when evaluating a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

## III. Discussion

Simpson seeks dismissal of Counts II, III, and IV of VFG's complaint. Simpson argues that VFG fails to state a claim as to these counts. Simpson also asks the Court to transfer this matter to the Middle District of Pennsylvania because the property at issue here is located within the Middle District. I address each of Simpson's arguments in turn.

### A.  Count II: Unjust Enrichment

VFG alleges that Simpson was unjustly enriched because VFG paid the snow removal and utility costs for the entire property without any contribution by Simpson. Compl. ¶¶ 43–44. Simpson argues that this claim should be dismissed because VFG's allegations regarding the existence or nonexistence of a contract or quasi-contract relationship between the parties does not state a claim upon which

relief can be granted. *See* Mot. to Dismiss at 4–5; Def.'s Reply Mem. in Supp. of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 10, at 1–2. Construing the complaint in the light most favorable to the plaintiff, I will deny Simpson's motion to dismiss this claim.

To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must demonstrate that: (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying for it. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999); *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 169 (Pa. Super. Ct. 2013). In the contract setting, an unjust enrichment claim arises "when plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). Even without an unconsummated or void contract, recovery can be available where a party was unjustly enriched outside the context of a valid contract. *See AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001) ("A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another."); *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994) ("[T]he most significant element of the doctrine is whether the

enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."). This cause of action "is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006). If it is unclear whether a contract in fact existed, parties may plead breach of contract and unjust enrichment in the alternative. *Grudkowski v. Foremost Ins. Co.*, 556 Fed. App'x 165, 170 n.8 (3d Cir. 2014) (citing *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265–66 (E.D. Pa. 2007)).

VFG's complaint sufficiently states a claim for unjust enrichment because it explains how Simpson's alleged inaction unjustly benefitted Simpson. VFG's complaint alleges that Simpson received the benefit of VFG's upkeep of the property. It is reasonable to infer that Simpson appreciated the benefit because VFG's actions excused Simpson of its obligations to remove snow from the property and pay the utility costs. Finally, it would be inequitable for Simpson to receive these benefits from VFG's actions without contributing to VFG's costs.

It is not clear from the complaint and the parties' briefing whether a contractual agreement existed between VFG and Simpson that would prevent VFG from bringing a claim of unjust enrichment. The complaint mentions several instances in which a contract between these parties might have formed: at the time

8

that Camelot transferred all its interest in the property to Simpson (¶ 10); when the parties agreed to the locations where Simpson would construct housing (¶ 11); or the subsequent assignment of the 1998 agreement from Simpson House, Inc. to Simpson Glen (¶ 12). However, the complaint does not explicitly allege the existence of a contract between VFG and Simpson that contemplated the upkeep costs of the property. VFG's response in opposition to Simpson's motion to dismiss is likewise not entirely clear: it states that "the relationship between the parties arises from a pre-existing joint venture agreement" and argues that the parties were bound by their joint venture agreement to acquire the property and "develop, operate, lease, sell, mortgage, and otherwise engage in all activities relating thereto." Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No. 8, at 1, 2. Then, in the same filing, VFG states that "Defendant was not a party to the Joint Venture Agreement[.]" *Id.* at 4.

Viewing VFG's complaint in the most favorable light, I assume that because the complaint does not explicitly allege the existence of a contract between the parties, one did not exist. I will permit VFG's claim of unjust enrichment to go forward at this stage and will deny Simpson's motion to dismiss.

**B.  Count III: Tortious Interference with Prospective Business Relations**

VFG alleges that Simpson interfered with VFG's prospective business relations by refusing to execute the deeds of sale for the fifteen units that VFG

9

built on the property. Compl. ¶ 58.[3] Simpson seeks dismissal of VFG's tortious interference claim based, in part, on the applicable two-year statute of limitations. Mot. to Dismiss at 7. VFG agrees that the cause of action accrued over two years ago, but it argues that "the continuing and repetitive nature of Defendant's conduct renders the cause of action viable now." Pl.'s Resp. at 5–6. Simpson counters that continuing harm caused by a tort is not synonymous with a continuing tort for statute of limitations purposes. Def.'s Reply at 3.

A statute of limitations defense may be raised in a Rule 12(b)(6) motion only if it is apparent on the face of the complaint that the cause of action has not been brought within the statute of limitations. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). That requirement is met here. Pennsylvania courts apply a two-year statute of limitations to tortious interference with contractual relations claims. *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004); *Bednar v. Marino*, 646 A.2d 573, 577 (Pa. Super. Ct. 1994) (citing 42 Pa.

---

[3] VFG also alleges that Simpson's refusal to engage in good faith negotiations and failure to contribute to upkeep costs on the property amount to claims of tortious interference. Compl. ¶ 58. However, VFG does not allege that these actions affected a contractual relationship or prospective contractual relationship between the plaintiff and another party. Without such an allegation, VFG's tortious interference claims on these grounds cannot proceed. *See Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008) (stating that the first element of a tortious interference claim is the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party, and that a prospective relationship must be "something more than a mere hope") (citation omitted); *see also Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (requiring a plaintiff to show that it is reasonably probable that, but for the wrongful acts of the defendant, the plaintiff would have had a contractual relationship with a third party).

C.S. § 5524(3)). That statute of limitations "begins to run only once a plaintiff can assert and maintain an action. In other words, a claim under Pennsylvania law accrues at the occurrence of the final significant event necessary to make the claim suable." *CGB*, 357 F.3d at 384. In a tortious interference claim, that final significant event is when "the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the defendant's conduct." *Id.* In this case, that event appears to be the moment when VFG had to pull out of its contracts (or prospective contracts) with the buyers of 15 units. In its complaint, VFG states that this event took place "several years" ago. Compl. ¶ 35; *see also* Pl.'s Resp. at 5–6 (conceding that the cause of action accrued "more than two years ago"). VFG's argument that the harm VFG continues to suffer from Simpson's alleged actions provides an exception to the statute of limitations is unavailing. *Dellape v. Murray*, 651 A.2d 638, 640 (Pa. Commw. Ct. 1994) ("We note that merely because the [Plaintiffs'] harm is continuous in nature does not make their cause of action against [Defendant] a continuing tort. . . . The alleged tort in this matter is one that arises from completed conduct that caused continuing harm."). The cause of action in this case accrued more than two years ago, and VFG has not alleged any continued *conduct* by Simpson that would permit VFG to proceed with this claim despite the two-year statute of limitations. I therefore grant Simpson's motion to dismiss Count III of VFG's complaint.

11

## C. Count IV: Fraud

VFG alleges that Simpson committed fraud by misrepresenting to third parties that Simpson was authorized to act on behalf of VFG. Compl. ¶¶ 64–68. Based on these misrepresentations, Simpson was apparently able to subdivide the property and change the location of the main access road with the approval of the Borough of Stroudsburg Planning Board. *Id.* ¶¶ 23–26. Simpson argues that this claim should be dismissed because VFG failed to plead this fraud claim with particularity and because VFG itself was not defrauded by Simpson's actions. Mot. to Dismiss at 8–9. I will grant Simpson's motion to dismiss this claim for both reasons.

A pleading alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[4] This generally means "plead[ing] the who, what, when, where, and how: the first paragraph of any newspaper story." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (internal quotation marks omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."). VFG's complaint does not include

---

[4] Simpson argues this point in part based on the heightened pleading standard for fraud under the Pennsylvania Rules of Civil Procedure. Mot. to Dismiss at 8. However, the Federal Rules of Civil Procedure apply here. *See Hanna v. Plumer*, 380 U.S. 460, 470 (1965).

allegations of the date or time of any of Simpson's false statements, nor does it recite with particularity the contents of these statements. While VFG alleges the "who"—Simpson—and some of the where—before the Borough of Stroudsburg Planning Board—these statements are insufficient to meet the heightened pleading standard for fraud. VFG's complaint must therefore be dismissed.

Additionally, VFG has not stated sufficient facts to establish all the elements of a fraud claim against Simpson. To prove fraudulent misrepresentation under Pennsylvania law, a plaintiff must establish six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)); *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022). The fifth element—reliance on the misrepresentation—requires that the *plaintiff* relied on the misrepresentation to their detriment. The Restatement (Second) of Torts § 531 states:

> One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

*See also Woodward v. Dietrich*, 548 A.2d 301, 316, 316 n.10 (Pa. Super. Ct. 1988) (drawing on § 531 but noting that it might not be adopted in all possible circumstances). The Restatement adds a caveat to this rule, stating that liability for a false statement could extend beyond that contemplated in this rule "to other persons or types of transactions, if reliance upon the representation in acting or in refraining from action may reasonably be foreseen." Restatement (Second) of Torts § 531 (Caveat). Courts have permitted liability to third parties only when the third parties have detrimentally relied on false statements repeated to them by the party originally misled by the misrepresentation.[5]

VFG does not allege that it was misled by Simpson, or that it relied on any of Simpson's false statements to the Stroudsburg Planning Board. VFG does not claim that it believed any of Simpson's misrepresentations about its authority to act, whether VFG heard these statements directly or indirectly. Based on the facts alleged in the complaint, VFG therefore cannot show that it satisfies the fifth element of fraudulent misrepresentation. VFG does not provide an alternative legal

---

[5] *See Woodward*, 548 A.2d at 316 (builder's false statement to home seller about the sewer condition created cause of action for plaintiff home buyer who relied on seller's repetition of builder's misrepresentation). *Cf. Edelen & Boyer Co. v. Kawasaki Loaders*, Civil Action No. 92-CV-1990, 1994 U.S. Dist. LEXIS 12579, at *16–18 (E.D. Pa. Sep. 7, 1994) (holding that a misrepresentation calculated to deceive the court did not satisfy the reliance element for a plaintiff who did not rely on the misrepresentation); *Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 n.5 (Pa. Commw. Ct. 2015) ("Feudale does not cite, and we are unaware of, any authority which would allow a third party to recover for a misrepresentation made to and relied upon by another party.").

mechanism by which it could recover for the damage it suffered based on Simpson's misrepresentations to the Planning Board.[6]

VFG does not meet the elevated pleading standard for fraud, and it does not allege all the necessary elements of fraudulent misrepresentation. Either one of these is a sufficient basis to dismiss this claim, and I will therefore grant Simpson's motion to dismiss Count IV of VFG's complaint.

### D. Motion to Transfer

Simpson moves to transfer this case to the Middle District of Pennsylvania. Mot. to Dismiss at 9–10. VFG opposes this motion because it selected the Eastern District of Pennsylvania as its preferred forum, and because the defendant and relevant records are located in this district. Pl.'s Resp. at 6–7. The parties agree that the Eastern and Middle Districts of Pennsylvania are both proper venues under the applicable federal venue statute. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."); 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which . . . a substantial part of property that is the subject of the action is situated."). Simpson argues that the case should be transferred pursuant to 28 U.S.C. § 1404(a), which allows a district court to transfer a civil action to another district where it might

---

[6] I do not reach the issue of whether VFG could seek relief for these misstatements under another legal theory.

have been brought "for the convenience of parties and witnesses, [and] in the interest of justice[.]"

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). To decide whether to transfer a case between districts that are both proper venues under the statute, courts consider "the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests include: the parties' preferences, whether the claim arose elsewhere, the convenience of the parties and witnesses, and the location of books and records. *Id.* The public interests include: the enforceability of the judgment, practical considerations, relative administrative difficulty, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*, 55 F.3d at 879–80. The moving party bears the burden of showing that these interests weigh in favor of transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation and internal quotation marks omitted).

The private interest factors in this case weigh slightly against transfer. The plaintiff has selected this Court, but the defendant prefers the Middle District.

"[T]he plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. However, the plaintiff's choice must be balanced with the chosen forum's relationship to the operative facts of the lawsuit. *See Care One, LLC v. Nat'l Labor Relations Board*, 680 F. Supp. 3d 540, 545 (D.N.J. 2023) ("[T]he plaintiff's preference is accorded relatively less weight when the plaintiff's preferred forum has "little connection with the operative facts of the lawsuit."); *United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 79 (D.D.C. 2011) ("[D]eference to the plaintiff's chosen forum is minimized . . . where that forum has no meaningful connection to the controversy."). The claim in this case arose in the Middle District, as the land at issue is located in that district. While the plaintiff alleges that Simpson's "officers, its headquarters, its books, its records and its assets are all located in the Eastern District[,]" the land itself and VFG's sales office, as well as the relevant local municipal offices, are all located in the Middle District. Pl.'s Resp. at 12; Compl. ¶ 38. Neither party argues that the Middle District is inconvenient or hard to reach for the parties or their witnesses. Overall, the plaintiff's choice of forum, while important, is weakened by the other private interest factors here.

      The public interest factors strongly favor transfer to the Middle District. Some public interest factors are irrelevant here: judgment would be enforceable regardless of transfer, no practical or administrative difficulty is alleged as to either

forum, and judges in both districts are equally equipped to interpret Pennsylvania law. The remaining factors include the local interest in deciding local controversies at home and the public policies of the fora.

First, "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded by statute on other grounds*. Land is a localized interest. *See, e.g., S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 88, 89 (D.D.C. 2004) (transferring land dispute case to Utah because the consequences of the case "would be most particularly felt in Utah, and thus [the] courts of Utah would have a clear interest in resolving the dispute."); *Chapman Univ. v. Atlantic Richfield Co.*, 2013 WL 12126015, at *8 (C.D. Cal. Feb. 25, 2013) (finding that "the local interest in the contamination and cleanup of the property in Orange is a substantial factor favoring transfer"). The two remaining claims in this case—a partition action and an unjust enrichment claim—are both closely tied to land use and ownership in a localized area.

Second, Pennsylvania's public policies support transfer to the Middle District. Pennsylvania Rule of Civil Procedure 1552 states that a partition action "may be brought in and only in a county in which all or any part of any property which is the subject matter of the action is located."[7] Pennsylvania's procedural

---

[7] The parties correctly state that the Pennsylvania procedural rule is not binding on this

rule reflects that cases should be heard in the "forum contain[ing] the center of gravity of the dispute, its events, and transactions." *Care One, LLC*, 680 F. Supp. 3d at 547 (citing *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-8978, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022)).

Taken together, these factors overcome Plaintiff VFG's interest in selecting a forum. This case will be transferred to the Middle District of Pennsylvania, where the claims arose, and where there is a greater local interest in adjudicating this action.

## IV. CONCLUSION

I will grant Simpson's motion to dismiss Counts III and IV of VFG's complaint, which allege tortious interference with prospective business relations and fraudulent misrepresentation. Simpson's motion to dismiss Count II (Unjust Enrichment) will be denied. Finally, I will grant Simpson's motion to transfer this case to the Middle District of Pennsylvania.

  s/ANITA B. BRODY, J.
ANITA B. BRODY, J.

---

Court. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965)